**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| CITY OF GRANITE CITY, IL | ) | |
| A HOME RULE UNIT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. _____ |
| AMERISOURCEBERGEN DRUG CORPORATION, | ) | (Removal from: Circuit Court of |
| CARDINAL HEALTH, INC., CARDINAL HEALTH | ) | the Third Judicial Circuit, |
| 112, LLC; CARDINAL HEALTH 110, LLC; | ) | Madison County) |
| CARDINAL HEALTH 108, LLC; CARDINAL | ) | |
| HEALTH 105, INC.; CARDINAL HEALTH 414, | ) | |
| LLC; MCKESSON CORPORATION; PURDUE | ) | |
| PHARMA L.P.; PURDUE PHARMA, INC.; THE | ) | |
| PURDUE FREDERICK COMPANY, INC.; | ) | |
| ABBOTT LABORATORIES; ABBOTT | ) | |
| LABORATORIES, INC.; TEVA | ) | |
| PHARMACEUTICAL INDUSTRIES, LTD.; TEVA | ) | |
| PHARMACEUTICALS USA, INC.; CEPHALON, | ) | |
| INC.; JOHNSON & JOHNSON; JANSSEN | ) | |
| PHARMACEUTICALS, INC.; ORTHO-MCNEIL- | ) | |
| JANSSEN PHARMACEUTICALS, INC. N/K/A | ) | |
| JANSSEN PHARMACEUTICALS, INC.; JANSSEN | ) | |
| PHARMACEUTICA INC. N/K/A JANSSEN | ) | |
| PHARMACEUTICALS, INC.; NORAMCO, INC.; | ) | |
| ENDO HEALTH SOLUTIONS INC.; ENDO | ) | |
| PHARMACEUTICALS, INC.; ALLERGAN PLC | ) | |
| F/K/A ACTAVIS PLC; WATSON | ) | |
| PHARMACEUTICALS, INC. N/K/A ACTAVIS, | ) | |
| INC. N/K/A ALLERGEN FINANCE, LLC; | ) | |
| WATSON LABORATORIES, INC.; ACTAVIS | ) | |
| LLC; ACTAVIS PHARMA, INC. F/K/A WATSON | ) | |
| PHARMA, INC.; MALLINCKRODT PLC; | ) | |
| MALLINCKRODT LLC; H.D. SMITH | ) | |
| WHOLESALE DRUG CO.; AND H.D. SMITH, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant McKesson Corporation ("McKesson") has removed the above-captioned action from the Circuit Court of the Third Judicial Circuit, Madison County to the United States District Court for the Southern District of Illinois.  As grounds for removal, McKesson states:

## I.    NATURE OF REMOVED ACTION

1.    On May 2, 2018, Granite City ("Plaintiff") filed *City Of Granite City, IL v. AmerisourceBergen Drug Corporation, et al.*, in the Circuit Court of the Third Judicial Circuit, Madison County.  The court assigned the case Docket No. 2018-L-587.

2.    The Complaint asserts claims against two groups of Defendants.

3.    The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.; Abbott Laboratories; Abbott Laboratories, Inc.; Teva Pharmaceutical Industries Ltd. (incorrectly named as "Teva Pharmaceutical Industries, Ltd."); Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc. (incorrectly named as Endo Pharmaceuticals, Inc.); Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt plc; and Mallinckrodt LLC (collectively, the "Manufacturer Defendants").  Compl. ¶¶ 15-35.

4.    The second group of defendants consists of AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; Cardinal Health 112, LLC, Cardinal Health 110, LLC, Cardinal Health 108, LLC, Cardinal Health 105, Inc., Cardinal Health 414, LLC; McKesson

1

Corporation; and H. D. Smith, LLC, f/k/a H. D. Smith Wholesale Drug Company (collectively, the "Distributor Defendants").  Compl. ¶¶ 36-48.

5.    The Complaint asserts six counts against McKesson and the other Distributor Defendants: public nuisance (Count I); violations of the Illinois Uniform Deceptive Trade Practices Act (Count II); negligence and negligent misrepresentation (Count III); negligence per se (Count IV); civil conspiracy (Count V); and fraud and fraudulent misrepresentation (Count VI).  *See* Compl. ¶¶ 379-498.

6.    Although Plaintiff asserts that federal jurisdiction is lacking, Compl. ¶ 52, Plaintiff pleads, among other things, that Distributor Defendants owe a duty under federal law to "monitor, detect, report, and refuse to fill suspicious orders of prescription opioids," *id.* ¶ 207, that the Distributor Defendants "failed to report suspicious orders originating from the State or the City" and "unlawfully filled suspicious orders," *id.* ¶¶ 217-218, and that Distributor Defendants therefore "breached their duty to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates originating from the State and the City, and/or in areas from which the Distributor Defendants knew opioids were likely to be diverted to the State and The City." *id.* ¶ 219.

7.    Because the duties governing reporting and shipping "suspicious" opioid orders arise from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiff pleads that alleged violations of federal law form the basis for its claims.

8.    On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407.  *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328.  More than

900 opioid-related actions are pending in the MDL, including actions originally filed in this Court.[1]

9.       McKesson intends to tag this case immediately for transfer to the MDL.

10.      In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and all process, pleadings, and orders served on McKesson in the state court action are attached as **Exhibit A**.

## II.    TIMELINESS OF REMOVAL

11.      Plaintiff served the Complaint on McKesson on or after June 8, 2018.

12.      In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiff's Complaint.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

13.      "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."    28 U.S.C. § 1446(b)(2)(C).

14.      McKesson has not responded to the Complaint in state court.

## III.    PROPRIETY OF VENUE

15.      Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.  Filing in the East St. Louis Division is

---

[1] *See, e.g.*, *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, No. 3:17-cv-01338 (S.D. Ill.) (filed in S.D. Ill. and transferred to the MDL); *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, No. 3:17-cv-01340 (S.D. Ill.) (same); *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, No. No. 3:17-cv- 01342 (S.D. Ill.) (same).

proper because this case is removed from Madison County, and Plaintiff is also a resident of Madison County.

## IV.   BASIS OF REMOVAL

16.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*

17.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

18.     "Whether a case arises under federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

19.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law."  *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[2]

---

[2] A defendant need not overcome any artificial presumptions against removal or in favor of remand.  In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand.  *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception.*") (emphasis added); *see also Exxon Mobil Corp. v Allapattah Servs.,*

20.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).  "Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Gunn*, 568 U.S. at 258.

21.     As set forth below, this case meets all four requirements.[3]

22.     Although Plaintiff ostensibly pleads some of its theories of recovery against McKesson as state law claims, it bases the underlying theory of liability on McKesson's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that McKesson allegedly had a duty to identify, report, and then not ship.  Compl. ¶¶ 207, 217-219.

---

*Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply.") (citation omitted).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331."  132 S. Ct. 740, 749 (2012) (brackets, citations, and internal quotation marks omitted).

[3] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims.  *See Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

23.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See* Compl. ¶ 183 (citing 21 U.S.C. §823 and 21 C.F.R. § 1301.74 as source of duty to "maintain effective control against diversion of particular controlled substances into other than legitimate . . . channels"); *id.* ¶ 191 (citing 21 C.F.R. § 1301.74(b) as source of duty "to design and operate a system to disclose . . . suspicious orders of controlled substances"); *id.* ¶¶ 197-98, 223-24.

24.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice.  Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses.  *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (Drug Enf't Admin. July 3, 2007), as source of DEA's "Shipping Requirement"); *see also* Compl. ¶ 192 (citing *Southwood Pharm.* and *Masters* decisions to support proposition that wholesale distributors "must also stop shipment on any order that is flagged as suspicious and only ship orders which were flagged as suspicious if, after conducting due diligence, the distributor can determine that the order is not likely to be diverted into illegal channels").

25.     Plaintiff's theories of liability against McKesson and other Distributor Defendants, as pled in the Complaint, are predicated on allegations that McKesson and Distributor Defendants breached alleged duties under the CSA to implement effective controls to

detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiff's claims—to refuse to ship such orders to Illinois pharmacies.

26.     Specifically, Plaintiff pleads that McKesson and the other Distributor Defendants violated federal law with, among others, the following allegations:

a.     "Each Distributor Defendant has an affirmative duty under . . . federal law (21 U.S.C. § 823, 21 CFR 1301.74) . . . to act as a gatekeeper guarding against the diversion of the highly addictive, dangerous opioid drugs into the State and the City.  Federal law requires that Distributors of Schedule II drugs, including opioids, must maintain effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels. 21 U.S.C. § 823(b)(1)." Compl. ¶ 183.

b.     "Federal regulations impose a non-delegable duty upon wholesale drug distributors to design and operate a system to disclose to the registrant suspicious orders of controlled substances . . . [and] inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant.  Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.  21 C.F.R. § 1301.74(b)." Compl. ¶ 191.

c.     "In addition to reporting all suspicious orders, distributors must also stop shipment on any order which is flagged as suspicious and only ship orders which were flagged as potentially suspicious if, after conducting due diligence, the distributor can determine that the order is not likely to be

diverted into illegal channels. *See Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,501 (Drug Enf't Admin. July 3, 2007); *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017)." Compl. ¶ 192.

d.      "The Distributor Defendants breached their duty to design and operate a system to disclose to the registrant suspicious orders of controlled substances and failed to inform the authorities including the DEA of suspicious orders when discovered, in violation of their duties under federal and state law.  21 C.F.R. § 1301.74(b) and Illinois laws and regulations incorporating federal requirements." Compl. ¶ 223.

e.      "McKesson admitted that, during this time period, it failed to maintain effective controls against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain of its customers in violation of the CSA and the CSA's implementing regulations, 21 C.F.R. Part 1300 *et seq.*, at the McKesson Distribution Centers[.]" Compl. ¶ 235.

f.      "In the 2008 Settlement Agreement, McKesson recognized that it had a duty to monitor its sales of all controlled substances and report suspicious orders to DEA, but had failed to do so.  The 2017 Memorandum of Agreement documents that McKesson continued to breach its admitted duties by fail[ing] to properly monitor its sales of controlled substances and/or report suspicious orders to DEA, in accordance with McKesson's obligations." Compl. ¶ 236.

g.  "Because of the Distributor Defendants' refusal to abide by their legal obligations, the DEA has repeatedly taken administrative action to attempt to force compliance.  For example, in May 2014, the United States Department of Justice, Office of the Inspector General, Evaluation and Inspections Divisions, reported that the DEA issued final decisions in 178 registrant actions between 2008 and 2012.  The Office of Administrative Law Judges issued a recommended decision in a total of 117 registrant actions before the DEA issued its final decision, including 76 actions involving orders to show cause and 41 actions involving immediate suspension orders."  Compl. ¶ 238.

h.  "Defendants are aware, and at a bare minimum certainly should be aware, of the unreasonable interference that their conduct has caused in the State and The City.  Defendants are in the business of distributing prescription drugs, including opioids, which are specifically known to Defendants to be dangerous according to federal and Illinois law.  *See, e.g.*, 21 U.S.C.A. § 812 (b)(2)[.]"  Compl. ¶ 399.

i.  "The . . . federal laws set out in . . . 21 U.S.C. §§ 812, 823; 21 C.F.R. § 1301.74; [and] 28 C.F.R. § 0.100, are public safety laws.  Each Defendant had a duty under, inter alia, these laws [to] maintain effective controls against diversion of prescription opioids and to guard against, prevent, and report suspicious orders of opioids.  [. . .] Defendants' actions and omissions in violation of the law constitute negligence per se."  Compl. ¶¶ 458-459.

9

27.     In alleging that Distributor Defendants "owe[ ] a duty under federal and state law to . . . monitor, detect, report, and refuse to fill suspicious orders of prescription opioids," Compl. ¶ 207, Plaintiff relies *entirely* on federal law and "Illinois laws and regulations *incorporating federal requirements*."  Compl. ¶ 223 (emphasis added); *see also* Compl.  ¶¶  195, 197.  Plaintiff does not and cannot identify a state law that specifically requires wholesale pharmaceutical distributors to "monitor, detect, report, and refuse to fill suspicious orders" from registered pharmacies.  *Id.* ¶¶ 220-223.[4]

28.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.

29.     *First*, Plaintiffs' state law claims "necessarily raise" a federal question because "[t]he resolution of this case turns on issues of federal law."  *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467 (7th Cir. 2015); *see also N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, where the vindication of a right under

---

[4]  None of the Illinois laws or regulations that Plaintiff cites in its Complaint creates an independent obligation to detect, report, or refuse to fill suspicious orders.  *See* Compl. ¶¶ 220-223 (citing 720 ILCS 570/205; 225 ILCS 120/40; Ill. Admin. Code Title 68, § 1510.50(i)).  720 ILCS 570/205 authorizes the Illinois Department of Human Services to classify a controlled substance as a Schedule II substance, but makes no reference to any obligation on the part of distributors.  As relevant here, Ill. Admin. Code Title 68, § 1510.50(1) provides that "[w]holesale drug distributors shall operate in compliance with applicable federal, state and local laws and regulations"; while 225 ILCS 120/40 states that the Department of Professional Regulation "shall adopt regulations that conform to wholesale drug distributor licensing guidelines formally adopted by the FDA at 21 C.F.R. Part 205."  To the extent that these regulations could be construed as incorporating by reference parts of the CSA and its implementing regulations pertaining to suspicious orders, any potential duties to monitor, report, or halt suspicious orders could be understood *only* by interpreting *federal* law.

state law necessarily turns on some construction of federal law, the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331.") (alteration omitted); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles.") (emphasis added).

30.     As pled, Plaintiff's claims against McKesson and the other Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties that are necessarily defined by reference to federal law, by failing to report and stop shipments of otherwise lawful orders of controlled substances to Illinois.

31.     For example, in pleading negligence per se, Plaintiff cites to a host of federal and Illinois laws, claiming that each Defendant violated "a duty under . . . these laws…to guard against, prevent, and report suspicious orders of opioids."  Compl. ¶ 458.  Notably, Plaintiff appears to acknowledge that the duty to report or halt suspicious orders arises under the federal CSA and its implementing regulations, and these federal obligations are, at best, "incorporated by Illinois law." *Id.* ¶ 197.  The "express incorporation of a federal law into the state statute on which the plaintiffs' cause of action is grounded" necessarily raises an "embedded federal question," and "[n]o more is exigible to surmount the first step of the *Grable* progression." *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009); *see also NASDAQ OMX Grp., Inc. v. UBS Sec.*, LLC, 770 F.3d 1010, 1022 (2d Cir. 2014) ("The Services Agreement incorporates NASDAQ's rules by reference, but NASDAQ's duties to promulgate those rules and then to adhere to them were dictated by federal

law . . . . Thus, UBS's indemnification claims are reasonably understood to seek compensation for losses allegedly caused by NASDAQ's violation of its federal law duties . . . [and] necessarily raise disputed issues of federal law.") (citations omitted); *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) ("[Plaintiffs] contend that Oklahoma personal property law includes and incorporates the federal requirement for purposes of the conversion claim. To win under this particular theory of conversion, plaintiffs must show that the Secretary's advance approval is required under federal law . . . . Accordingly, the conversion claim necessarily raise[s] a stated federal issue." (internal citations omitted)); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) ("The first part of the test is clearly met [because] Broder's claim that Cablevision breached a contract term consisting of § 543(d) incorporated by reference . . . necessarily raise[s] the issue of whether Cablevision violated § 543(d)." (internal citations omitted)).

32.     Similarly, in pleading public nuisance, Plaintiff claims that "[a] violation of any rule or law controlling the distribution of a drug of abuse in the State and The City is a public nuisance," Compl. ¶ 393, and that "Defendants' distribution of opioids while failing to maintain effective controls against diversion was proscribed by statute and regulation." Compl. ¶ 394. To that end, Plaintiff alleges that "Defendants violated the federal and Illinois Controlled Substances Acts . . . [by] fail[ing] to effectively monitor for suspicious orders, report suspicious orders, and/or stop shipment of suspicious orders." Compl. ¶ 389; *see also* Compl. ¶ 409. However, Plaintiff cannot locate any standalone duty to monitor, report, or halt suspicious orders within the Illinois CSA,[5] and must instead rely on the federal CSA to allege that Distributor Defendants

---

[5] Nowhere does the Illinois CSA independently impose a duty to monitor, report or halt suspicious orders. The specific provisions of the Illinois CSA that Plaintiff cites do not support such a duty. *See* Compl. ¶¶ 190 (citing 720 ILCS 570/205, 720 ILCS 570/206); 399 (citing 720

breached such a duty to cause an "unreasonable interference" with public health, safety, and welfare.  Compl. ¶ 399.  Plaintiff's public nuisance claim thus "necessarily raise[s] disputed issues of federal law" because it is predicated on the violation of a "singular duty . . . [that] derives directly from federal law."  *NASDAQ*, 770 F.3d at 1022; *see also Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co.*, 850 F.3d 714, 723 (5th Cir. 2017) ("The absence of any state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable means that that duty would have to be drawn from federal law.").

33.     Although plaintiffs "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here alleges violations of federal law as the basis for its state-law claims.[6]  Plaintiff's Complaint necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA by failing to report, prevent, or halt suspicious orders for prescription opioids.

---

ILCS 570/205).  720 ILCS 570/205 identifies criteria that the Illinois Department of Human Services should use in deciding whether to place a controlled substance on Schedule II; 720 ILCS 570/206 lists the drugs in Schedule II.  Neither references, much less imposes duties pertaining to suspicious orders of prescription drugs; nor does the rest of the Illinois CSA contain any such requirement.

[6] It is not necessary for federal jurisdiction that McKesson establish that all of Plaintiff's counts against it raise a federal question.  Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"  *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against McKesson and the other Distributor Defendants, which are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a).

34.    *Second*, this federal issue is "actually disputed" because the parties disagree as to the scope and existence of alleged duties arising under the CSA and whether Distributor Defendants violated duties that, as Plaintiff pleads them, arise only under the CSA.  Indeed, this federal issue is the "central point of dispute."  *Gunn*, 568 U.S. at 259.

35.    *Third*, the federal issue presented by Plaintiff's claims is "substantial."  "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law."  *Id.* at 260-62 (internal citations omitted).  As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.

36.    Plaintiff's theories of Distributor Defendants' liability necessarily require that a court determine the scope and existence of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation.  *See* Compl. ¶ 195 ("Each Defendant was further required to register with the DEA, pursuant to the federal Controlled Substance Act.  Each of the Distributor Defendants is a registrant . . . with a duty to comply with all security requirements imposed under that statutory scheme.").  Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and

dangerous drug control."  H.R. Rep. No. 1444, 91st. Cong., 2nd Sess. 1970, *as reprinted in* 1970

U.S.C.C.A.N. 4566, 4571-72.

      37.     Plaintiff's theories of Distributor Defendants' liability thus "involve aspects of the

complex federal regulatory scheme applicable to" the national prescription drug supply chain,

*Broder*, 418 F.3d at 195, and are "sufficiently significant to the development of a uniform body

of [controlled substances] regulation to satisfy the requirement of importance to the federal

system as a whole," *NASDAQ,* 770 F.3d at 1024.[7]  The CSA itself notes that "illegal importation,

manufacture, distribution, and possession and improper use of controlled substances have a

substantial and detrimental effect on the health and general welfare of the American people" and

that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential

to the effective control of the interstate incidents of such traffic."  21 U.S.C. § 801.  Furthermore,

"minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 318 (2d Cir. 2016)

(alteration and citation omitted); *Rhode Island Fishermen's All., Inc*, 585 F.3d at 51 (noting, in a

case involving state law claims arising out of the implementation of an interstate fisheries

compact, "there is a substantial federal interest in ensuring that actions taken in pursuance of the

Management Act receive the uniformity of interpretation that a federal forum offers.").

---

[7] Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action.  In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one."  *Grable*, 545 U.S. at 316; *see also, e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

38.     Removal is particularly appropriate here because Plaintiff's action is but one of more than 1100 similar actions nationwide, of which over 900 are pending in the MDL in the Northern District of Ohio.  Indeed, Plaintiff acknowledges that opioid use and addiction is not merely a local issue, but is "a serious national crisis that affects public health as well as social and economic welfare."  Compl. ¶ 63.  The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[8]

39.     *Fourth*, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—applies them.  Federal jurisdiction is further warranted given the hundreds of similar actions pending in the MDL, which "in the aggregate . . . have the potential to substantially influence the scope and success" of the federal statutory scheme to regulate controlled substances.  *Evergreen Square of Cudahy*, 776 F.3d at 468.  "Accordingly, the federal government has a strong interest in these issues being decided according to uniform principles[,]" which "will best be achieved by allowing suit in federal courts."  *Id*.

40.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and

---

[8] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018.  Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *Evergreen Square of Cudahy*, 776 F.3d at 467-68 (state law claims alleging defendants' breached a contract for Section 8 housing by failing to approve rent increases satisfy *Grable*, raising issues that the "federal government has a strong interest in . . . being decided according to uniform principles."); *New York ex rel. Jacobson*, 824 F.3d at 315-18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ,* 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore*, 694 F.3d at 1176 ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question.  Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal question removal jurisdiction").

41.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Manufacturer Defendants and Distributor Defendants under the doctrine of supplemental jurisdiction.  28 U.S.C. § 1367(a).

## V.     OTHER REMOVAL ISSUES

42.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served in this action consent to removal.

43.     The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below:   AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; Cardinal Health 112, LLC; Cardinal Health 110, LLC;

Cardinal Health 108, LLC; Cardinal Health 105, Inc.; Cardinal Health 414, LLC; Purdue Pharma L.P.; Purdue Pharma Inc.; and The Purdue Frederick Company, Inc.; Abbott Laboratories; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica Inc. n/k/a Janssen Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Noramco, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Actavis, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; and Mallinckrodt, LLC.

44.     The following Defendants have not been properly served, and thus their consent to removal is not required: Abbott Laboratories, Inc.; Teva Pharmaceutical Industries, Ltd.; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Mallinckrodt plc; and H. D. Smith, LLC, f/k/a H. D. Smith Wholesale Drug Company Nevertheless, they consent to removal.  The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses related to service of process and personal jurisdiction.

45.     By filing this Notice of Removal, neither McKesson nor any other Defendant waives any defense that may be available to it, and Defendants expressly reserve all such defenses, including those related to personal jurisdiction and service of process.

46.     If any question arises as to propriety of removal to this Court, McKesson requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

47.     Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

48.     McKesson reserves the right to amend or supplement this Notice.

**WHEREFORE**, McKesson removes this action, pending in the Circuit Court of the Third Judicial Circuit, Madison County, Docket No. 2018-L-587, to this Court.

July 9, 2018

> /s/ Alex Vesselinovitch
> Alex Vesselinovitch
> FREEBORN AND PETERS LLP
> 311 S. Wacker Drive, Suite 3000
> Chicago, IL 60606
> (312) 360-6000
> (312) 360-6520 (facsimile)
> avesselinovitch@freeborn.com
>
> *Attorneys for McKesson Corporation*

## CONSENT TO REMOVAL FROM OTHER DEFENDANTS

> /s/ James F. Bennett
> James F. Bennett
> Arsenio L. Mims
> DOWD BENNETT LLP
> 7733 Forsyth Blvd., Suite 1900
> St. Louis, MO 63105
> T: 314.889.7300
> F: 314.863.2111
> jbennett@dowdbennett.com
> amims@dowdbennett.com
>
> *Attorneys for AmerisourceBergen Drug Corporation*

> /s/ Julie Fix Meyer
> Raymond R. Fournie (#03126094)
> Anita M. Kidd  (#06229585)
> Julie Fix Meyer  (#06319219)
> Sarah E. Harmon  (#06319219)
> ARMSTRONG TEASDALE LLP
> 7700 Forsyth Blvd., Suite 1800
> St. Louis, Missouri 63105-1847
> (314) 621-5070

19

(314) 621-5065 (facsimile)
rfournie@armstrongteasdale.com
akidd@armstrongteasdale.com
jfixmeyer@armstrongteasdale.com
sharmon@armstrongteasdale.com

*Attorneys for Cardinal Health, Inc.; Cardinal Health 112, LLC, Cardinal Health 110, LLC, Cardinal Health 108, LLC, Cardinal Health 105, Inc., and Cardinal Health 414, LLC*


/s/ Mark S. Cheffo
Mark S. Cheffo*
Hayden A. Coleman*
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
Tel: (212) 698-3500
Fax: (212) 698-3599
Mark.Cheffo@dechert.com
Hayden.Coleman@dechert.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Purdue Pharma L.P.; Purdue Pharma Inc.; and The Purdue Frederick Company, Inc.*


/s/ John A. McCauley
John A. McCauley*
VENABLE LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
T: (410) 244-7655
F: (410) 244-7742
JMcCauley@Venable.com

Richard J. Prendergast, Esq.
Michael T. Layden, Esq.
Richard J. Prendergast, Ltd. (#11381)
111 W. Washington St., Suite 1100
Chicago, Illinois 60602

20

(312) 641-0881
rprendergast@rjpltd.com
mlayden@rjpltd.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Abbott Laboratories and Abbott Laboratories, Inc.*


*/s/ Steven A. Reed*
Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
steven.reed@morganlewis.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Teva Pharmaceutical Industries Ltd.;[9] Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*


*/s/ Charles C. Lifland*
Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen*

---

[9] Teva Pharmaceutical Industries Ltd. ("Teva Ltd") is a foreign company and it is not subject to personal jurisdiction in the United States.  Teva Ltd. expressly reserves all defenses, including those related to personal jurisdiction and service of process.

*Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc.; and Janssen Pharmaceutica
Inc. n/k/a Janssen Pharmaceuticals, Inc.*

*/s/ Daniel G. Jarcho*
Daniel G. Jarcho*
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3254
Facsimile: (202) 239-333
daniel.jarcho@alston.com

Cari K. Dawson*
Jenny A. Mendelsohn*
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
cari.dawson@alston.com
jenny.mendelsohn@alston.com

*\*denotes national counsel who will seek pro hac
vice admission*

*Attorneys for Noramco, Inc.*

*/s/ Emily Newhouse Dillingham*
Emily Newhouse Dillingham
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
(312) 583-2300
emily.dillingham@arnoldporter.com

John A. Freedman*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
(202) 942-5000
john.freedman@arnoldporter.com

*\*denotes national counsel who will seek pro hac*

22

*vice admission*

*Attorneys for Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*

*/s/ Donna Welch*
Donna Welch, P.C.*
Martin L. Roth*
Timothy Knapp*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com
martin.roth@kirkland.com
timothy.knapp@kirkland.com

Jennifer G. Levy, P.C.*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
jennifer.levy@kirkland.com

*\*denotes national counsel who will seek pro hac vice admission*

*Attorneys for Allergan plc f/k/a Actavis plc and Allergan Finance, LLC. f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*

*/s/ Brien T. O'Connor*
Brien T. O'Connor*
Andrew J. O'Connor*
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Mallinckrodt LLC and Mallinckrodt plc*

<u>/s/ Paul Olszowka</u>
Paul Olszowka
BARNES & THORNBURG
One North Wacker Drive
Suite 4400
Chicago, IL 60606-2833
T: (312) 214-5612
F: (312) 759-5646
Email: paul.olszowka@btlaw.com

*Attorneys for H. D. Smith, LLC, f/k/a H. D. Smith Wholesale Drug Company*

24

## CERTIFICATE OF SERVICE

I, Alexander S. Vesselinovitch, an attorney, hereby certify that on July 9, 2018, I electronically filed the foregoing **Notice of Removal** with the Clerk of the Court using the CM/ECF system and that the document was also served on the following counsel of record for Plaintiff via electronic mail:

Ann E. Callis, #6203933
Tom Lech, #6256261
Katie A. Hubbard, #6303558
Gregory R. Jones, #6325696
Goldenberg Heller & Antognoli, P.C.
2227 South State Route 157
Edwardsville, IL 62025
Tel: 618.656.5150
Fax: 618.656.6230
acallis@ghalaw.com
tlech@ghalaw.com
khubbard@ghalaw.com
gjones@ghalaw.com

Paul T. Farrell, Jr.
Greene, Ketchum, Farrell, Bailey & Tweel, LLP
419 - l lth Street (25701)/ P.O. Box 2389
Huntington, WV 25724-2389
Tel: 800.479.0053 or 304.525.9115
Fax: 304.529.3284
paul@greeneketchum.com

Russell W. Budd
J. Burton LeBlanc, IV
Laura J. Baughman
S. Ann Saucer
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel: 214.521.3605
Fax: 214.520.1181
rbudd@baronbudd.com
bleblanc@baronbudd.com
lbaugbman@baronbudd.com
asaucer@baronbudd.com

James M. Papantonio
Peter J. Mougey
Page A. Poerschke
Laura S. Dunning
Archie C. Lamb, Jr.
Jeffrey Gaddy
Neil E. McWilliams, Jr.
Levin Papantonio Thomas Mitchell Rafferty &
Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Tel: 850.435.7068
Fax: 850.436.6068
mpapantonio@levinlaw.com
pmougey@levinlaw.com
ppoerschke@levinlaw.com
Idunning@levinlaw.com
alamb@levinlaw.com
jgaddy@levinlaw.com
nmcwilliams@levinlaw.com

Roland K. Tellis
Mark P. Pifko
Baron & Budd, P.C.
15910 Ventura Boulevard, Suite 1600
Los Angeles, CA 91436
Tel: 818.839.2333
Fax: 818.986.9698
rtellis@baronbudd.com
mpifko@baronbudd.com

Anthony J. Majestro, Esq.
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel: 304.346.2889
Fax: 304.346.2895
amajestro@powellmaj'estro.com

Janies C. Peterson
R. Edison Hill
Hill, Peterson, Carper, Bee & Deitzler, PLLC
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311
Tel: 304.345.5667

Fax: 304.345.1519
jcpeterson@hpcdb.com
rehill@hpcbd.com

Eric D. Holland
R. Seth Crompton
Holland Law Firm
300 North Tucker Suite 801
St. Louis, MO 63101
Tel: 314.241.8111
Fax: 314.241.5554
eholland@allfela.com

David Cates
Cates Mahoney, LLC
216 West Pointe Drive, Suite A
Swansea, IL 62226
Tel: 618.277.3644
Fax: 618.277.7882
dcates@cateslaw.com

Michael J. Fuller, Jr.
Amy Quezon
McHugh Fuller Law Group, PLLC
97 Elias Whiddon Rd.
Hattiesburg, MS 39402
Te1: 601.261.2220
Fax: 601.261.2481
mike@mchughfuller.com
amy@mchughftiller.com

/s/      Alexander S. Vesselinovitch

*Attorney for Defendant McKesson Corporation*